**ALAMO LUMBER COMPANY, Appellant,**
v.
**WARREN PETROLEUM CORPORA-
TION, Appellee.**

No. 19758.

United States Court of Appeals
Fifth Circuit.

April 19, 1963.

Harold K. Stanard and Beckmann, Stanard, Wood & Vance, San Antonio, Tex., for appellants.

Grady Barrett and Matthews, Nowlin, Macfarlane & Barrett, San Antonio, Tex., for appellee.

Before HUTCHESON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

This is an appeal from a judgment granting indemnity to Warren Petroleum Corporation under a contract between it and Alamo Lumber Company.

On June 1, 1960, Alamo agreed in writing with Warren to build cabinets in a chemical laboratory on Warren's plant

site near Fashing, Texas. The contract contained the following provision:

"D. INDEMNIFICATION AND INSURANCE—Contractor [Alamo] indemnifies and agrees to hold Owner [Warren] harmless from any and all liability, claims, demands or judgments for damages resulting from injuries to or death of persons, including Contractor and Contractor's employees or any injury to or destruction of the property of others, including the property of Contractor or that of Contractor's employees, or any damages or losses to the property of Owner while Contractor is performing the work, *which arises out of or in connection with* the activities of Contractor, Contractor's servants, agents and employees."

During the course of Alamo's construction in the laboratory, it was found necessary to remove a sink, and two of the pipes leading into it, a gas pipe and an intake water pipe, were plugged up. A third pipe, for sewer drainage, was disconnected but was left open. Waste gas from Warren's natural gasoline plant backed up in the sewer and was discharged through the open pipe into the laboratory while two of Alamo's employees were working there. Both men were overcome by the poisonous gas and became unconscious before they could get out of the room.

The two men brought suit for damages against Warren for negligence, and each recovered $5,000. Warren, in turn, sought indemnity under its contract with Alamo. The lower court granted judgment over. Macon v. Warren Petroleum Corp., W.D.Tex.1962, 202 F.Supp. 194. Alamo appeals. We affirm.

## I.

The question is whether the indemnity agreement protects Warren in view of the fact that the jury verdict necessarily required a finding that Warren's own negligence caused the accident. Alamo, the indemnitor, argues that since it is not an insurance company or profession-

al surety, the indemnity provision should be narrowly construed; in the absence of an express stipulation to indemnify Warren for its own negligence, Alamo should not be liable.

Texas law controls, and Texas courts uniformly have rejected such a rule of construction. Thus, the Texas Supreme Court stated in Mitchell's, Inc. v. Friedman, 1957, 157 Tex. 424, 303 S.W.2d 775 that

"It is not necessary * * * for the parties to say in so many words that they intend to protect the indemnitee against liability for negligence. An obligation to hold harmless from claims, liability or damage resulting from a specified operation or instrumentality will be enforced in accordance with its terms even though the indemnitee may thereby be relieved of the consequences of its own negligence."

The Texas Supreme Court followed this holding in the very recent case of Ohio Oil Co. v. Smith, (Tex.1963), 365 S.W.2d 621. The Court pointed out that

"The 'express negligence' doctrine has, in effect, been rejected in this state not only in instances involving the rental or leasing of property, but also in cases where an owner-contractor relationship exists. [Citation omitted.] * * * In owner-contractor situations judicial construction of indemnity clauses to cover the indemnitee's negligence notwithstanding absence of an express provision to that effect in the contract has been said to be common."

This is not a new ruling. One of the earliest cases dealing with this issue, Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204 (1920), involved a contract provision under which a brick company agreed to save a railroad company "harmless from any and all claims for damages" arising out of the construction, operation and maintenance of a spur track leading to the brick company's plant. In rejecting

the argument that there could be no indemnity against the railroad's own negligence, the Texas Supreme Court stated:

"[T]his section would be inoperative and rendered meaningless if construed to exclude negligence, as a claim for damages against the railroad company growing out of any of these things could have no standing in a court unless predicated upon the negligence of the railroad company, or its servants. The section must, we think, be construed as contemplating claims for damages founded upon such negligence."

Texas courts have not deviated from this holding. See, for example, James Stewart & Co. v. Mobley, 1955, Tex.Civ. App., 282 S.W.2d 290; Crews Well Service v. Texas Company, 1962, Tex.Civ. App., 358 S.W.2d 171, writ ref'd n. r. e. 1962, 360 S.W.2d 873; Spence & Howe Construction Co. v. Gulf Oil Corp., (Tex. 1963), 365 S.W.2d 631. The indemnity provision now before us is no more narrowly drawn than the provisions in these cases and, like them, must be construed to afford Warren protection even against its own negligence.

## II.

■ Alamo next suggests that the damage claim here did not "arise out of or in connection with" its contractual obligations. It urges that there must be some causal relation between the work which it was obligated to perform under the contract and the damages for which it is liable to indemnify Warren. Since the asphyxiation of its employees by escaping gas had no necessary connection with the contract for cabinet construction, it is not liable. In support of its contention, Alamo cites Employers Casualty Co. v. Howard P. Foley Co., 5 Cir., 1946, 158 F.2d 363 and Westinghouse Electric Corp. v. Childs-Bellows, 1961, Tex.Civ.App., 352 S.W.2d 806 writ ref'd.

Neither case presents a comparable fact pattern. In Employers Casualty Co. v. Howard P. Foley Co., 5 Cir., 1946, 158 F.2d 363, the damage claims resulted

from a gas explosion which injured the subcontractor's employees while they were changing clothes in a locker room preparatory to going to work. The claims were held not to come within the scope of an indemnity agreement. There, however, the contract "related only to installation of electrical work and none was going on in the dressing room." This Court specifically stated: "[T]he sub-contractor was in no way or degree performing his contract at that time and place. They were in a room of the Contractor which was under the control of the Contractor, and not of the Subcontractor who had no business there. * * * [The injury] did not occur in the course of performance of his contract by the Sub-contractor. He is not liable as indemnitor." 158 F.2d at p. 365. Similar reasoning precluded liability for indemnity in Westinghouse Electric Corp. v. Childs-Bellows. In that case two employees of Westinghouse were struck by objects accidentally dropped by employees of Childs-Bellows. They recovered damages from Childs-Bellows, which, in turn, sought indemnity from Westinghouse.

The Texas court ruled:

"[I]n view of the provisions of the indemnity agreement, it is clear that indemnity was intended to extend only to injuries to persons growing out of or incident to or resulting from performance, or the failure to perform, on the part of Westinghouse, the work of installing the elevators. The agreement does not show an intent of the parties to indemnify Childs-Bellows for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor. The injuries sustained by the Westinghouse employees were not injuries growing out of any work undertaken by Westinghouse but, according to the stipulations, were due solely to negligence of employees of the general contractor, Childs-Bellows, in work which in so far as the stipulations show

had no connection whatever with the installation of the elevators, and work with which Westinghouse had no connection."

In neither case was the injury sustained *"in connection with"* the work required by the contract. Here, however, Alamo had contracted to install cabinets, and when the two men were overcome by gas they were admittedly installing the cabinets near the uncapped pipe. Since the only requirement for indemnity is that the employee's injury have some connection with Alamo's work, Warren is entitled to recovery over against Alamo.

This Court considered an almost identical factual situation arising under a similar indemnity agreement in American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856. There two of the contractor's employees while engaged in installing electrical work in a chemical plant were injured by breathing phosphorous fumes negligently set loose by the chemical company. The company settled the claims against it and then sought indemnity from the contractor. This Court held:

"Under [Article 9 of the agreement] the contractor agreed to indemnify and save the owner harmless 'from all claims for injuries to * * * any and all persons including without limitation, employees * * * of the contractor arising out of or in connection with or by reason of the work done' under the contract. The work being done by Powell and Nye was work of the contract. They were injured in connection with that work by an agency of the owner. Their injuries are clearly embraced by the terms of this article. The contract contemplated specifically that the plant of the owner would be in continuous operation while the work of the contract took place. The employees of the contractor would, of necessity, be subjected to the hazards of the business of the owner. These very injuries occurred in this manner."

■ The American Agricultural Chemical Company case was governed by Florida law, but the result we reach in the present case is also supported by the Texas Supreme Court's most recent holding on the subject. In Ohio Oil Co. v. Smith, 1963, Tex., 365 S.W.2d 621, Smith was to perform work-over operations on one of Ohio's oil wells. One of Smith's employees was injured when he fell from a test tank Ohio owned and furnished for the work-over operations. Ohio settled with the employee for $15,-000 and then sought indemnity from Smith under a contractual provision which stated

"Ohio shall not be liable or responsible for and Contractor shall save and hold harmless Ohio from and against any and all claims and damages of every kind, for injury to or death of any person or persons and for damages to or loss of property, arising out of or attributed, directly or indirectly, to the operations of Contractor hereunder. Contractor shall likewise indemnify Ohio for any or all injury or damage to property belonging to Ohio, arising out of or in connection with or resulting from any and all acts or omissions of Contractor hereunder."

The trial judge granted summary judgment to Ohio, which the court of appeals reversed. The Supreme Court, reversing the court of appeals and reinstating the trial court's judgment, held that Ohio was entitled to indemnity under the contract. Spence & Howe Construction Co. v. Gulf Oil Corp., 1963, Tex., 365 S.W.2d 631, reached the same result. There the Court stated:

"The rule is that when the wording of the contract is sufficiently broad to cover the negligence of the indemnitee and the situation of the parties with reference to the subject matter of the contract is such that it can clearly be said that the parties intended that the negligence of

the indemnitee should be covered by the indemnity agreement, then liability thereunder will be sustained *whenever the injury asserted as a basis for indemnity is one which arose out of the operations embraced by the contract."* (Emphasis supplied.)

The injury in the instant case arose out of the installation of cabinets around the unstopped sewer drain pipe. This was an operation embraced by the contract. Giving the words "in connection with" their natural and ordinary meaning, as in American Agricultural Chemical Co. v. Tampa Armature Works, the injuries were sustained in connection with Alamo's contract with Warren. Liability for the injuries was therefore within the scope of the indemnity clause.

The judgment is

Affirmed.